UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Blue Athletic, Inc.,
    Petitioner

    v.                              Civil No. 10-cv-036-SM
                                  Opinion No. 2010 DNH 116
Nordstrom, Inc. and NIHC, Inc.,
    Respondents

**O R D E R**

Blue Athletic, Inc., operates a retail clothing store and an online denim store, both named "denimrack." It seeks declaratory judgment that "denimrack" does not infringe trademarks owned by respondents, and that it is entitled to federal trademark registration for its "denimrack" mark. Before the court is respondents' motion to dismiss. Petitioner objects. For the reasons given, respondents' motion to dismiss is denied.

**Background**

Blue Athletic has owned and operated an online denim shop found at www.denimrack.com since 2006. In June of 2009, it opened a retail clothing store in Portsmouth, New Hampshire, also called "denimrack." Around the time it opened its Portsmouth store, Blue Athletic filed an application for federal trademark registration of the "denimrack" mark.

Shortly after a Notice of Publication issued from the United States Patent and Trademark Office ("PTO"), Blue Athletic received a letter from respondents' counsel which stated, in pertinent part:

> . . . Nordstrom is one of the nation's leading retailers and its reputation and trademarks are extremely valuable assets. As a trademark owner, our client is required to watch for and take reasonable steps to address misuse, infringement and dilution of its marks.
>
> . . . .
>
> Your use of "DenimRack" and "what's in your rack?" for retail clothing services is likely to confuse customers into believing your services are sponsored or affiliated with Nordstrom or its Rack store, when they are not. Thus, your use and application conflict with Nordstrom's prior rights under the federal Lanham Act, 15 U.S.C. § 1501 et seq. and applicable state laws.
>
> Thus, on behalf of Nordstrom, we must demand that you cease and desist all use of "DenimRack", "what's in your rack?" and other RACK marks to promote your services.

(Resp't's Obj., Uhrin Aff. (document no. 16-3), Ex. A.) More specifically, Nordstrom asked Blue Athletic to: (1) discontinue its use of "DenimRack" and adopt new marks that do not include RACK or any variant thereof; (2) withdraw its trademark application for "DENIMRACK"; and (3) discontinue its use of www.DenimRack.com and adopt a new domain name that does not include RACK or any variant thereof. Blue Athletic responded that there was no likelihood of confusion between its mark and

respondents' marks. Respondents, in turn, restated their demands, but expressed an interest in "resolving this matter amicably." (Uhrin Aff., Ex. B.) A week later, respondents filed a Notice of Opposition to Blue Athletic's registration of "denimrack" with the PTO's Trademark Trial and Appeal Board ("TTAB") in which they contended that "denimrack" was confusingly and deceptively similar to their own "Nordstrom Rack" and "Rack" marks.

Asserting reasonable anticipation that respondents would file an infringement action if it continued to use its "denimrack" mark, and that the opposition action before the TTAB would not resolve all the issues between the parties, Blue Athletic filed this suit for declaratory judgment that: (1) its use of the mark "denimrack" does not infringe any valid trademark rights respondents may have in the "Nordstrom Rack" mark; (2) its use of the mark "denimrack" does not infringe any valid trademark rights respondents may have in the "Rack" mark; and (3) because "denimrack" does not infringe respondents' marks, it is entitled to federal trademark registration for its "denimrack" mark.

**Discussion**

Respondents move to dismiss Blue Athletic's petition in its entirety, arguing that because petitioner's anticipation of an

infringement action is not reasonable, its claims are not ripe for decision, and the court is, accordingly, without subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Moreover, in reliance on both Rule 12(b)(1) and Rule 12(b)(6), respondents move to dismiss Blue Athletic's third request for relief, i.e., a declaration that it is entitled to federal registration for its "denimrack" mark, on the additional ground that exclusive jurisdiction to determine the registrability of the "denimrack" mark rests with the PTO until that agency renders a decision on Blue Athletic's application.

A. Subject Matter Jurisdiction

"The proponent of federal jurisdiction bears the burden of proving its existence by a preponderance of the evidence." United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 54 (1st Cir. 2009) (citing Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005); 31 U.S.C. § 3731(d)). In ruling on respondents' motion to dismiss, the court must "take as true all well-pleaded facts in the [petition], scrutinize them in the light most hospitable to [petitioner's] theory of liability, and draw all reasonable inferences therefrom in [petitioner's] favor." United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 20 (1st Cir. 2009) (quoting Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009)).

4

Blue Athletic brings this suit under the federal Declaratory Judgment Act, which provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . ."  28 U.S.C. § 2201(a).  In other words, the Act "empowers a federal court to grant declaratory relief in a case of actual controversy."  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).  Moreover, "federal courts retain substantial discretion in deciding whether to grant declaratory relief."  Id. On the other hand, given the constitutional case-or-controversy requirement, see U.S. CONST. art. III, § 2, "a court has no alternative but to dismiss an unripe [declaratory judgment] action."  Ernst & Young, 45 F.3d at 535.

The court of appeals for this circuit has explained that, in a Lanham Act declaratory judgment action, "[a] federal court will not start up the machinery of adjudication to repel an entirely speculative threat."  PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 79 (1st Cir. 1996).  In determining that the threat faced by the declaratory judgment petitioner in PHC was not entirely speculative, the First Circuit invoked the rule that "reasonable anticipation [of a claim under the Lanham Act] is a

settled requirement in a federal declaratory judgment action of this character." Id. at 79 (citing Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc., 439 F.2d 871, 873 (1st Cir. 1971)).

As petitioner correctly suggests, what was a "settled requirement" at the time PHC was decided has since been set aside. In MedImmune, Inc. v. Genentech, Inc., the Supreme Court held that a patent licensee "was not required, insofar as Article III is concerned, to break or terminate [a] license agreement [and thus create the risk of a claim against it] before seeking a declaratory judgment in federal court that the underlying patent [was] invalid, unenforceable, or not infringed." 549 U.S. 118, 137 (2007). As the Court explained:

> Aetna [Life Ins. Co. v. Haworth, 300 U.S. 227 (1937)] and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not.  Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id.,at 240-241. In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

MedImmune, 549 U.S. at 127 (parallel citations omitted); see also Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008) (contrasting Supreme Court's former "reasonable apprehension" test with "the more general all-the-circumstances test" adopted in MedImmune); Russian Std. Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc., 523 F. Supp. 2d 376, 382 (S.D.N.Y. 2007) ("The MedImmune standard is necessarily less rigorous than the 'reasonable apprehension of imminent suit' test . . . .").

In Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp., another patent case, the Federal Circuit recognized that MedImmune effectively overruled the "two-part reasonable-apprehension-of-suit test" it had previously used to determine whether it had jurisdiction over declaratory judgment actions. 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citation omitted); see also SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test."). And, in Surefoot LC v. Sure Foot Corp., 531 F.3d 1236 (10th Cir. 2008), a trademark case, the Tenth Circuit held that MedImmune displaced its previous jurisdictional test, 531 F.3d at 1244, which required a declaratory judgment

petitioner to demonstrate "a reasonable apprehension that an imminent suit for trademark infringement was forthcoming," id. at 1240-41. In place of its former test, the Surefoot court applied the principles from Aetna and Maryland Casualty as stated in MedImmune. See Surefoot, 531 F.3d at 1244-45. Based on MedImmune, Teva Pharmaceuticals, and Surefoot, it seems likely that the First Circuit, if presented with the question, would hold that MedImmune effectively overruled the "reasonable anticipation" test described in PHC.

Respondents argue that because MedImmune is a patent case, and patent law presents public policy considerations that do not apply to trademark law, MedImmune should not be applied to trademark cases. That argument is not persuasive. No court of appeals has so held. Moreover, the Tenth Circuit rejected a similar argument in Surefoot, see 531 F.3d at 1243, and at least one other circuit has applied MedImmune in a trademark case, see Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir. 2009) (pointing out, in trademark declaratory judgment action, that "[f]ollowing MedImmune, the 'reasonable apprehension of suit' requirement no longer applies"). Numerous district courts have also applied MedImmune in declaratory judgments actions brought to determine rights under the Lanham Act. See, e.g., Sinclair v. StudioCanal, S.A., ___ F. Supp. 2d

___, ___, 2010 WL 1743208, at *3 (E.D. La. Apr. 29, 2010); Poly-America, L.P. v. Stego Indus., L.L.C., 694 F. Supp. 2d 600, 605-08 (N.D. Tex. 2010); Monster Cable Prods., Inc. v. Euroflex S.R.L., 642 F. Supp. 2d 1001, 1010-11 (N.D. Cal. 2009); Young v. Vannerson, 612 F. Supp. 2d 829, 838-46 (S.D. Tex. 2009); Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc., 600 F. Supp. 2d 1003, 1008 (N.D. Ill. 2009); Geisha, LLC v. Tuccillo, 525 F. Supp. 2d 1002, 1010-11 (N.D. Ill. 2007); HSI IP, Inc. v. Champion Window Mfg. & Supply Co., 510 F. Supp. 2d 948, 955-56 (M.D. Fla. 2007).[1] No federal court has declined to apply MedImmune to a trademark case, and no good reason for this court to do so has been presented.

Under the now-applicable standard, Blue Athletic's claims are ripe for decision. The controversy between the parties is substantial, the parties plainly have adverse interests, and the

---

[1] See also Geltech Solutions, Inc. v. Marteal, Ltd., No. 09-CV81027, 2010 WL 1791423, at *3 (S.D. Fla. May 5, 2010); In re Casino de Monaco Trademark Litig., No. 07 Civ. 4802(DAB), 2010 WL 1375393, at *8 (S.D.N.Y. Mar. 31, 2010); Loufrani v. Wal-Mart Stores, Inc., No. 09 C 3062, 2009 WL 3787941, at *3 (N.D. Ill. Nov. 12, 2009); Wham-O, Inc. v. Manley Toys, Ltd., No. CV 08-07830 CBM (Ssx), 2009 WL 6361387, at *3 (C.D. Cal. Aug. 13, 2009); Floyd's 99 Holdings, LLC v. Woodman, No. 08-cv-01321-MSK-BNB, 2009 WL 798804, at *3-*4 (D. Colo. Mar. 24, 2009); Franek v. Walmart Stores, Inc., Nos. 08-CV0058 & 08-CV-1313, 2009 WL 674269, at *8 n.7 (N.D. Ill. Mar. 13, 2009) ("While MedImmune arose in the patent context, trademark law historically has been treated in a similar manner, especially in regard to declaratory judgments.").

controversy is both immediate and real.  See MedImmune, 549 U.S. at 127.  The parties dispute Blue Athletic's right to continue using the "denimrack" mark, with which it has labeled its website since 2006 and its retail store since 2009.  As in Surefoot, Blue Athletic asks this court "only to adjudicate the rights of the parties based on historical facts and an already existing dispute over a federal right."  531 F.3d at 1244.  Moreover, "the parties . . . have a dispute that is definite and concrete that would admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id. at 1245 (citation and internal quotation marks omitted).  Under the MedImmune standard, Blue Athletic's requests for declaratory judgment are ripe for decision.

Respondents attempt to distinguish Surefoot on factual grounds, arguing that the parties in Surefoot shared a longer and richer history of disagreement over trademark issues than the parties in this case.  That may be so, but still, in this case, the parties' history of disagreement includes respondents' demand letters, which set out a prima facie case of trademark infringement, see PHC, 75 F.3d at 79 (pointing out the import of a demand letter setting out the elements of an infringement claim), and a formal TTAB opposition which is based on a claim

10

that Blue Athletic's mark would infringe on respondents' marks, see Surefoot, 531 F.3d at 1246 (pointing out the difference between oppositions that touch on infringement and those that do not, and suggesting the relevance of those that do).  While there has been less history between the parties in this case than there was between the parties in Surefoot, the combination of two demand letters and formal TTAB opposition on infringement grounds, all steeped in the language of trademark infringement, is sufficient to meet the MedImmune standard.

    This is not a case like those the court worried about in Surefoot, in which "the only indicia of a live infringement controversy is the existence of a single TTAB opposition proceeding, or perhaps a single cease-and-desist letter."  531 F.3d at 1247.  Rather, the circumstances here have more in common with cases like Chesebrough-Pond's, Inc. v. Faberge, Inc., in which the Ninth Circuit held that the pre-MedImmune "reasonable apprehension" test was satisfied by a TTAB opposition preceded by a cease-and-desist letter that threatened the filing of an opposition (but not the filing of an infringement suit) and that "stated a prima facie case for trademark infringement," 666 F.2d 393, 396 (9th Cir. 1982); see also Mfrs. Hanover Corp. v. Maine Sav. Bank, No. 84 Civ. 2046 (JFK), 1985 WL 181, at *2 (S.D.N.Y. Jan. 10, 1985) (determining that the "reasonable apprehension"

test was satisfied by respondents' letter indicating its "aggressive" approach to protecting its marks, combined with its filing of an opposition to petitioner's trademark application). In sum, Surefoot supports Blue Athletic's position.

Even if PHC were still good law, respondents would still not be entitled to dismissal.  Respondents' demand letters invoked the Lanham Act far more explicitly than the demand letters in PHC.  See 75 F.3d at 79.  They allege conduct on Blue Athletic's part that, if proven, would violate the Lanham Act.  See id. (pointing out that "the conduct of PHC, as described by the Pioneer companies' letters, could easily amount to a violation of section 43(a)" of the Lanham Act); see also Chesebrough-Pond's, 666 F.2d at 396-97 (finding it "reasonable to infer from Faberge's letter a threat of an infringement action" when letter did not expressly threaten infringement action but "stated a prima facie case for trademark infringement" by alleging "use in commerce of a mark so similar to Faberge's that it was likely to cause confusion").  Moreover, while the demand letters in this case did not expressly state that respondents would initiate an infringement action if Blue Athletic did not capitulate, a specific threat is not necessary to create a reasonable anticipation, see PHC, 75 F.3d at 79, and, in any event, those letters characterized the capitulation they demanded as

"resolving this matter <u>amicably</u>" which was more than enough to suggest the possibility of a less amicable resolution, <u>i.e.</u>, legal action. In short, "[n]o competent lawyer advising [Blue Athletic] could fail to tell it that, based on the threatening letters and the surrounding circumstances, a [trademark infringement] suit was a likely outcome." <u>PHC</u>, 75 F.3d at 79. Thus, even if <u>PHC</u> were still good law, respondents would not be entitled to dismissal of Blue Athletic's declaratory judgment action on grounds that the claims are not ripe.

Because Blue Athletic's claims are ripe for review, the court does not lack subject matter jurisdiction over them. To the extent respondents seek dismissal on that basis, their motion is denied.

<u>B. Exclusive Jurisdiction – Primary Jurisdiction</u>

Respondent also argue that Blue Athletic's third request for declaratory relief should be dismissed because "the Lanham Act grants exclusive jurisdiction to the U.S. Trademark Office to decide issues of registrability in the first instance." (Resp't's Mem. (document no. 15-1), at 9.) Because Blue Athletic has not responded to that argument, respondents ask the court to grant that portion of their motion as unopposed. Given Blue Athletic's vigorous objection to respondents' first argument,

which pertains to all three requests for declaratory relief, and the absence of an express waiver, the court is not inclined to find that Blue Athletic has waived or forfeited its third request for relief.  Accordingly, the court turns to the merits of respondents' argument.

Respondents rely on Merrick v. Sharp & Dohme, Inc., 185 F.2d 713 (7th Cir. 1950), for the proposition that this court is barred from considering the registrability of Blue Athletic's proposed "denimrack" mark until after the PTO has exercised its "exclusive jurisdiction" and issued a decision on Blue Athletic's application.  Respondents' reliance on Merrick is misplaced.  In that opinion, the Seventh Circuit answered only this question:

> Does the filing in the Patent Office of a statutory notice of opposition to the registration of a trademark, which opposition is based upon the confusion-in-trade clause of the statute, create an actual controversy between the parties justiciable by a Federal Court under the Declaratory Judgment Act?"

185 F.2d at 713.  In holding that "[a] notice of opposition . . . should not be construed to be a charge of infringement or a threat to proceed to redress past infringements or to prevent future infringements," id. at 717, the court did not decide whether the pendency of a trademark application bars a district court from determining the registrability of the mark at issue in

14

the pending application.  Accordingly, Merrick has no bearing on the issues presented in this case.

 The District of Columbia Circuit has observed that "[d]istrict courts have broad authority to review trademark decisions by the U.S. Patent and Trademark Office (PTO), both before and after the registration of a mark . . . [and] may authorize the PTO to register or to deny registration to a pending mark."  Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 12-13 (D.C. Cir. 2008) (emphasis added).  In a case in which a petitioner filed a declaratory judgment action in the district court, then filed a petition with the TTAB, and then asked the district court to stay its proceedings pending resolution of the case before the TTAB, the district court declined to do so.  Invoking the doctrine of "primary jurisdiction," the court noted that it "along with the TTAB has concurrent jurisdiction over registration and cancellation of trademarks under 15 U.S.C. § 1119."  W & G Tenn. Imports, Inc. v. Esselte Pendaflex Corp., 769 F. Supp. 264, 266 (M.D. Tenn. 1991) (citing Durox Co. v. Duron Paint Mfg. Co., 320 F.2d 882, 886 (4th Cir. 1963)).  And, in Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, notwithstanding the fact the parties to the district court declaratory judgment action were also parties to cancellation and opposition proceedings pending before the

TTAB relating to the same two trademarks, the district court determined that it had jurisdiction to order both cancellation and registration of the marks at issue.  333 F. Supp. 2d 975, 979-80 (D. Or. 2004).  Aktieselskabet, Tennessee Imports, and Tillamook all demonstrate that the PTO's jurisdiction over trademark registration is not "exclusive."

Closer to home, the First Circuit confronted the relevant legal issue, and, rather than determining that the TTAB had "exclusive jurisdiction," stated that "[p]roblems of coordination and priority between court and agency are usually discussed under the rubric of primary jurisdiction."  PHC, 75 F.3d at 80 (citing Massachusetts v. Blackstone Valley Elec. Co., 67 F.3d 981, 992 (1st Cir. 1995)).  That rubric is employed because the real issue is whether a court should, in its discretion, exercise its jurisdiction in particular circumstances.  See PHC, 75 F.3d at 79-81.  Finally, the PHC opinion also points out that the TTAB "has a rule contemplating such suspensions [of proceedings before it] where a court action may moot the matter before the agency."  Id. at 78 (citing 37 C.F.R. § 2.117).

Because the TTAB does not have exclusive jurisdiction over the registrability of Blue Athletic's marks, respondents are not

entitled to dismissal of Blue Athletic's third request for declaratory relief.

## Conclusion

For the reasons given, respondents' motion to dismiss (document no. 15) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 19, 2010

cc: Tracy A. Uhrin, Esq.
    Steven E. Grill, Esq.
    Nathaniel E. Durrance, Esq.
    William O. Ferron, Jr., Esq.